# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELAINE DISCUILLO, *Plaintiff*, v. ALLSTATE INSURANCE COMPANY, *Defendant*. | No. 3:17-cv-00234-MPS |

**RULING ON MOTION TO COMPEL APPRAISAL AND STAY LITIGATION**

Elaine Discuillo brings this suit against her homeowner's insurance provider, Allstate Insurance Company ("Allstate"), for breach of contract. (ECF No. 1-1.) Specifically, Discuillo alleges two counts against Allstate in her revised complaint: (1) demanding "Specific Performance" of the appraisal provision in the insurance policy (the "Policy"), (ECF No. 24 at ¶¶ 1–11); and (2) "Breach of Contract" for allegedly refusing to pay Discuillo for losses to her property (*id.* at ¶¶ 11–13). Discuillo moves to compel appraisal and stay this action based on "Connecticut General Statutes § 52-410 and the insurance policy that is the subject of this action." (ECF No. 38 at 1.) Allstate opposes the motion, arguing: (1) that the parties' dispute concerns coverage issues while the appraisal clause concerns valuation issues, and that their dispute thus falls outside of the appraisal clause (ECF No. 39 at 5–7); and (2) that Discuillo waived any right to compel appraisal by participating in discovery and motion practice in this lawsuit for over a year before filing the motion to compel (*id.* at 7–8).

1

Because I agree with Allstate's second argument, I DENY the motion and do not address the first argument.

I.  **Background**

   A. Relevant Facts

The following facts are taken from Discuillo's revised complaint, the parties' briefs, and the attached exhibits.

On February 10, 2015, while Discuillo "was insured under a homeowner's property insurance policy issued by [Allstate] [(the "Policy")], . . . a snow and/or ice storm caused damage to [Discuillo's] home and personal property." (ECF No. 24 at ¶ 3–4 (alteration in original).) On April 26, 2016, Discuillo "submitted an insurance claim under the Policy to Allstate" for the alleged property damage. (ECF No. 39 at 1.)

On May 13, 2016, Allstate sent "Allstate adjuster Dale Laprise . . . [to] inspect[] the property to identify various categories of claimed damage to the interior and exterior of the property." (ECF No. 39 at 2.) Laprise concluded that the following areas of Discuillo's home— the areas with interior water damage caused by ice damming, (*id.*)—were covered under the Policy: front left bedroom, front right bedroom, hall bathroom, hallway, main upper roof, and right lower roof (ECF No. 38-1, Ex. 3 at 91–96). Laprise estimated the "replacement cost value" for those areas to be $9,077.36. (*Id.* at 98.) After Allstate applied "the Policy's $750 deductible and a deduction for recoverable depreciation" (ECF No. 39 at 2), it issued a payment to Discuillo in the amount of $4,591.64 (ECF No. 38 at ¶ 5). "Laprise wrote to [Discuillo] to deny her claim for damage to the exterior trim, siding, mold, master bathroom skylight, garage duct work leak, and basement based on certain exclusions in the Policy." (ECF No. 39 at 2.)

After concluding that "a potential exist[ed] for a difference of opinion on the damages" (ECF No. 38, Ex. 4), "[Discuillo] demanded appraisal of [her] claim . . . and appointed Catastrophe Services, Inc. as her appraiser." (ECF No. 38 at ¶ 6.) The Policy provides, in relevant part:

> If you and we fail to agree on the amount of loss, either party may make a written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.
>
> The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of agreement to you and to us the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

(ECF No. 38-1, Ex. 1 at 39.) Allstate informed Discuillo, however, that her "demand for appraisal was premature given [her] failure to provide Allstate with documents relevant to her claim." (ECF No. 39 at 3; ECF No. 39-2 at 3.) Discuillo then "provided [Allstate] an estimate to repair said damage in the amount of $101,201.38." (ECF No. 38 at ¶ 4; *see* ECF No. 39-3 at 2–3.)

Upon receiving Discuillo's estimate, Allstate informed her that it "disagreed with the estimate on both coverage and valuation grounds." (ECF No. 39 at 3; ECF No. 39-3 at 2.) Allstate proposed a "limited-scope appraisal" "to address those issues for which the parties agreed there was coverage under the Policy." (ECF No 39-3 at 2.) On September 14, 2016, Discuillo, through her prior counsel, declined, stating that "[w]e have determined this claim will

3

not be handled via the appraisal process as it is not appropriate in this case." (ECF No. 39-4 at 2.)[1]

    B. Procedural History

On January 20, 2017, Discuillo filed this action against Allstate in Connecticut Superior Court alleging six counts of breach of insurance contract. (*See* ECF No. 1-1.) On February 14, 2017, Allstate removed the case to this Court. (*See* ECF No. 1.) On April 12, 2017, the Court held a Rule 16 Pretrial Conference in which it set deadlines for discovery, dispositive motions, and expert reports. (ECF No. 18 at 1–2.) Further, at the parties' request (*id.* at 2), the Court referred the case to Magistrate Judge Donna F. Martinez for mediation (ECF No. 19). Discuillo filed an amended complaint on May 10, 2017. (ECF No. 24.) In response, Allstate filed a motion to dismiss count one of the amended complaint (ECF No. 25), which the Court denied. (See ECF No. 36).

On September 8, 2017, Magistrate Judge Martinez held a settlement conference, but the case did not settle and instead "[t]he parties agreed to a further inspection of the property." (ECF No. 29.) In their joint status reports following the settlement conference (ECF No. 31; ECF No. 33), the parties indicated that they partook in inspections of Discuillo's property, had completed initial discovery requests, and were in the process of scheduling depositions and securing relevant documentation through third-party subpoenas (ECF No. 33).

---

[1] The parties have also filed statements of material facts regarding Allstate's pending summary judgment motion (ECF No. 40), portions of which concern the issue of appraisal (ECF No. 47-2; ECF No. 49). Those statements reveal no disagreement as to the material facts concerning appraisal, except that Allstate denies that it did not appoint an appraiser and states instead that it agreed to "proceed with a limited-scope appraisal only to have plaintiff's prior counsel refuse to proceed with appraisal." (ECF No. 49 at 2.)

4

On February 2, 2018, Allstate filed its answer to Discuillo's amended complaint. (ECF No. 37.) On March 19, 2018, Discuillo filed this motion to compel appraisal and stay litigation. (ECF No. 38.)

## II. Legal Standards

Discuillo invokes Section 52-410 of the Connecticut General Statutes, which provides in pertinent part as follows:

> A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement.

Conn. Gen. Stat. § 52-410(a).[2]

"[B]oth federal law and Connecticut law strongly favor arbitration as a means of resolving disputes with limited involvement from heavily-burdened courts." *Singleton v. Grade A Mkt., Inc.*, 607 F. Supp. 2d 333, 339 n.3 (D. Conn. 2009). Arbitration, however, "is a creature of contract . . . [and therefore,] [a] person can be compelled to arbitrate a dispute only if . . . he

---

[2] Although Discuillo invokes Conn. Gen. Stat. § 52-410 in her motion (ECF No. 38 at 1), it appears that the Federal Arbitration Act is equally applicable, *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995) (holding that the language of the FAA should be construed broadly and applies in all transactions affecting commerce); *see also Levine v. Advest, Inc.*, 244 Conn. 732, 747 (1998) (concluding that because "[t]he [FAA] governs written arbitration agreements that pertain to contracts involving interstate commerce . . . the arbitration act is to be applied by state courts as well as by federal courts."). Nevertheless, principles concerning whether a party has waived its right to arbitrate are similar under both federal and state law. *See, e.g.*, *Sutherland v. Ernst & Young, LLP*, 600 Fed. Appx. 6, 7 (2d Cir. 2015) (internal quotations omitted) ("In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, we consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including the motion practice and discovery; and (3) proof of prejudice."); *see also, e.g., MSO, LLC v. DeSimone*, 313 Conn. 54, 64 (2014) (internal quotations omitted) ("[U]njustifiable delay in seeking arbitration may warrant a finding of waiver . . . . The same result follows from going to trial without insisting upon the arbitration condition." Additionally, "[a] party seeking to assert the defense of waiver must show that he was substantially prejudiced . . . [i]n order to determine whether a party has been substantially prejudiced, many factors must be considered, not the least of which is whether the claims that the defendants seek to assert in the arbitration are the same as those asserted in the prior litigation and whether initiation of the arbitration constituted an unjustifiable delay."). Accordingly, I rely on both federal and state case law in this ruling.

has agreed to do so . . . ." *Stack v. Hartford Distribs., Inc.*, 179 Conn. App. 22, 28 (2017) (alteration in original).[3]

**III. Analysis**

I conclude that Discuillo has waived her right to compel appraisal under the Policy. I therefore do not reach Allstate's argument about the scope of the appraisal clause.

A party can waive its contractual right to arbitration by actively participating in a lawsuit or taking other action inconsistent with that right. *Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 161 (2d Cir. 2017) (affirming the district court's conclusion that the defendants, by their participation in litigation, including filing a motion for leave to amend its answer to the plaintiff's first amended complaint, waived their right to demand arbitration). "In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question," the Second Circuit considers three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including the motion practice and discovery; and (3) proof of prejudice." *Sutherland*, 600 Fed. Appx. at 7.

"The key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Id.*; *MSO, LLC*, 313 Conn. at 68 (reaffirming "the waiver standard that has developed through common law" in concluding that "a party opposing arbitration on the ground of waiver must demonstrate that it will be prejudiced by enforcement of the arbitration clause."). The Second Circuit has recognized that prejudice may result from, among other things,

---

[3] "Under Connecticut law, an appraisal clause contained in an insurance policy 'constitutes an agreement to arbitrate and falls within the ambit of [the State's] arbitration statues, General Statutes §§ 52-408–52-424.'" *S. Air, Inc., v. Chartis Aerospace Adjustment Servs., Inc.*, No. 3:11CV1495 (JBA), 2012 WL 162369, at *2 (D. Conn. Jan. 18, 2012) (alteration in original) (quoting *Middlesex Mut. Assurance Co. v. Clinton*, 38 Conn. App. 555, 557 n.2 (1995)).

6

"excessive cost and time delay," which is typically accompanied by substantial motion practice or discovery. *Sutherland*, 600 Fed. Appx. at 8 (holding that, because there was no substantial motion practice during the four months elapsed between commencing litigation and the defendant asserting its arbitration rights, the defendant did not waive its right to compel arbitration); *see also Gambacorta v. Covenant Ins. Co.*, No. CV136006583S, 2015 WL 1867090, at *2 (Conn. Super. Ct. Mar. 23, 2015) (finding that the plaintiffs established they would be prejudiced by enforcement of the appraisal clause because "the issue the defendants [sought] to litigate [was] substantially the same . . . [and] the plaintiffs [had] committed substantial time and expense in pursuing [the] litigation for almost two years.").

In the present case, although Discuillo initially sought to compel appraisal under the Policy on July 14, 2016 (ECF No. 38 at ¶ 6), she later unequivocally withdrew that demand, responding to Allstate's limited-scope appraisal proposal with the definitive assertion that she had determined that "this claim [would] not be handled via the appraisal process as it [was] not appropriate in this case." (ECF No. 39-4 at 2). Four months later, Discuillo filed this lawsuit. (ECF No. 1-1.) Rather than immediately request that the Court compel appraisal and stay litigation, Discuillo filed a six-count complaint (ECF No. 1-1), in which one count demanded specific performance of the appraisal process (*id.* at ¶¶ 1–11).

It was not until March 19, 2018, that Discuillo actually moved to compel appraisal and stay litigation. (ECF No. 38.) This was fourteen months after the case was filed, eleven days before the close of discovery, and less than six weeks before the deadline for dispositive motions. In the meantime, as indicated in the parties' joint status reports (ECF No. 31; ECF No. 33), joint motion for extension of time (ECF No. 34), and other filings (ECF No. 42; ECF No. 47), the parties actively litigated the case. They litigated Allstate's motion to dismiss,

participated in the discovery process—including an inspection, documentary discovery, and Discuillo's January 29, 2018 deposition (ECF No. 42-3)—and mediated the case unsuccessfully with a Magistrate Judge.

Permitting Discuillo now to invoke the appraisal process and stay this action would be prejudicial to Allstate under the Second Circuit's waiver principles. Discuillo litigated her case for fourteen months before requesting the Court to compel appraisal and stay litigation, she took full advantage of the litigation process by filing and responding to motions and participating in the discovery process, and Allstate devoted substantial time and resources to motion practice and discovery before Discuillo filed her motion, and shortly thereafter filed a motion for summary judgment within the time limit set by the Court. Allstate would thus incur substantial prejudice if the Court now stayed the case and referred the parties to arbitration.

### IV. Conclusion

For the reasons discussed above, Discuillo's Motion to Compel Appraisal and Stay Litigation (ECF No. 38), is DENIED.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

August 3, 2018