UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELAINE DISCUILLO, *Plaintiff,* | ) ) ) ) | CIVIL NO. 3:17-CV-234 (KAD) |
| v. | ) ) ) | |
| ALLSTATE INSURANCE COMPANY, *Defendant.* | ) ) | February 8, 2019 |

**MEMORANDUM OF DECISION RE:
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 40)**

Kari A. Dooley, United States District Judge

**Preliminary Statement of the Case**

This insurance coverage dispute was brought by the Plaintiff, Elaine Discuillo, against her homeowner's property insurance provider, Defendant Allstate Insurance Company. The Plaintiff claims that the Defendant breached its contract of insurance when it failed to pay for damage to her home allegedly caused by a snow and/or ice storm. Originally filed in state court, the matter was removed by the Defendant to this Court on February 14, 2017. In her revised complaint, the Plaintiff seeks specific performance of the appraisal provision of her insurance contract in Count One and damages for breach of contract in Count Two. The Defendant moved for summary judgment on both counts, arguing that the Plaintiff's suit is barred by the insurance policy's eighteen-month suit limitations provision and because the Plaintiff failed to timely notify the Defendant of her claim. In response, the Plaintiff does not substantively challenge the enforceability of the suit limitations provision or address the timeliness of her notice of claim. Instead, she argues that the Court should grant her then-pending motion to compel and stay litigation. Following the parties' briefing on this matter, Judge Shea denied the Plaintiff's motion to compel and stay litigation on August 3, 2018. For the reasons set forth below, the Defendant's motion for summary judgment is GRANTED.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's inquiry focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once the movant meets his burden, the nonmoving party must set forth "'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, until the moving party comes forward with evidence that would establish his entitlement to judgment as a matter of law, the non-moving party is under no obligation to produce any evidence. *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001).

**Facts**

The following material facts are either undisputed, admitted, or construed favorably to the Plaintiff. The Defendant provided homeowners insurance to the Plaintiff covering the Plaintiff's home at 375 Norwich Salem Turnpike in Oakdale, Connecticut. The policy at issue here covered the property from September 28, 2014 to September 28, 2015. On or about February 10, 2015, a winter storm damaged the Plaintiff's home. In the spring of 2015, a friend of the Plaintiff's applied sealant to the roof around a bathroom skylight, in an unsuccessful attempt to fix a leak purportedly caused by the storm damage. The Plaintiff also tried to spackle or putty certain spots in that bathroom but did not immediately do anything to repair the damage to two upstairs bedrooms.

Later, in the summer of 2015, the Plaintiff contacted a contractor, Michael Hancin ("Hancin"), but he did not visit the Plaintiff's property until April 2016. The Plaintiff "waited" on calling him out to the property because she "thought [she] had to have the deductible for [her] insurance policy and money for [the contractor]" and "had to save up."

The Plaintiff first filed an insurance claim with the Defendant on April 26, 2016. An adjuster for the Defendant, Dale Laprise ("Laprise"), inspected the property on May 13, 2016 and June 2, 2016. Noting some limited staining consistent with prior ice damming along the exterior walls of some of the rooms, Laprise estimated a $9,077.36 repair cost. After applying the recoverable depreciation and the policy's deductible, the Laprise issued the Plaintiff a check for $4,591.64. The Plaintiff later commenced suit against the Defendant in January 2017, serving the Defendant on January 23, 2017.

The policy at issue contains a suit limitations provision, expressly limiting the time for filing an action against the Defendant. That provision provides in relevant part:

*Section I – Conditions*

**Suit Against Us**

No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within eighteen months after the inception of loss or damage.

The policy also contains a provision detailing what steps an insured must take following a loss. That provision provides in relevant part:

*Section I – Conditions*

\*\*\*

**3. What You Must Do After a Loss**

In the event of a loss to any property that may be covered by this policy, you must:

    a) Promptly give us or our agent notice …

      b) Protect the property from further loss. Make any reasonable repairs necessary to protect it …

**Discussion**

*__The Policy's Suit Limitations Provision__*

It is well settled that insurance policies are construed and enforced under principles of contract law. *R.T. Vanderbilt Co. v. Continental Cas. Co.,* 273 Conn. 448, 462 (2005); *Galgano v. Metropolitan Property & Casualty Ins. Co.,* 267 Conn. 512, 519 (2004). Where such a contract contains a provision "requiring an action to be brought within a particular time period" the provision is binding and enforceable. *Roberts v. Amica Mut. Ins. Co.*, No. 3:14-CV-1589 (SRU), 2015 WL 7458510, at *3 (D. Conn. Nov. 24, 2015); *see also Voris v. Middlesex Mut. Assur. Co.,* 297 Conn. 589, 597-600 (2010) (parties are free to negotiate a limitations period into a contract and when they do so, it is enforceable). "A policy provision such as the one here is a valid contractual obligation, and the failure to comply therewith is a defense to an action on the policy." *Riggs v. Standard Fire Ins. Co.*, No. CV054010671S, 2006 WL 416201, at *3 (Conn. Super. Ct. Feb. 7, 2006) (finding that plaintiff's suit was barred by a one-year suit provision of the insurance contract).

Here, the policy requires any suit or action on the policy to be commenced "within eighteen months after the inception of loss or damage." In her revised complaint, the Plaintiff identifies the date on which her home was damaged as on or about February 10, 2015. This is a binding judicial admission. "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.... [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *accord Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009). The Plaintiff did not report the loss to the Defendant until April 26, 2016 and she did not commence this action until January 2017, serving the

Defendant on January 23, 2017. As such this action was commenced well beyond the contractual limitations period. The Plaintiff offers no valid excuse for her delay. Accordingly, the action is not timely and is barred under the terms of the policy. "Where it is undisputed that the [limitations] provision has not been complied with, summary judgment is appropriate." *Riggs*, 2006 WL 416201, at *3 (citing *Monteiro v. American Home Assur. Co*, 177 Conn. 281, 283 (1979)); *see also Brown v. State Farm Fire & Cas. Co.*, No. 3:10-CV-833 CFD, 2011 WL 4396747, at *3 (D. Conn. Sept. 20, 2011) ("Brown did not file his action within two years from the date of the loss and he did not allege sufficient facts to excuse his nonperformance."); *Knapp v. New London Cty. Mut. Ins. Co.*, No. CV126034028S, 2015 WL 3974384, at *6 (Conn. Super. Ct. June 1, 2015) ("Because litigation did not commence within the stated period, the plaintiff's action is barred, and the defendant is entitled to judgment as a matter of law."). The motion for summary judgment is thus granted on this basis.

### *The Policy's Notice Provision*

The Defendant also seeks summary judgment because the Plaintiff failed to comply with the policy's notice provision. That provision required the Plaintiff to notify the Defendant "promptly" in the event of a loss.

The Court must interpret the insurance contract according to the real intent of the parties as expressed through the language of the contract, giving the words of the contract their natural and ordinary meaning. *See Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006). "Under Connecticut law, absent waiver, an unexcused, unreasonable delay by an insured in notification of a covered occurrence constitutes a failure of condition that entirely discharges an insurance carrier from any further liability on its insurance contract." *State Farm Fire & Cas. Co. v. Yoel*, No. 03:13CV101 AWT, 2014 WL 4182614, at *5 (D. Conn. Aug. 21, 2014) (quoting *Arrowood Indem. Co. v. King*, 605 F.3d 62, 77 (2d Cir. 2010)). "Connecticut requires two

conditions to be satisfied before an insurer's duties can be discharged pursuant to the 'notice' provision of a policy: (1) an unexcused, unreasonable delay in notification by the insured; and (2) resulting material prejudice to the insurer." *Id.* Thus, "a policyholder who fails to give timely notice of an insurable loss does not forfeit [her] coverage if ... [her] delay did not prejudice [her] insurer." *Id.* "[T]he insurer bears the burden of proving ... that it has been prejudiced by the insured's failure to comply with a notice provision." *Id.* (quoting *Arrowood Indem. Co. v. King*, 304 Conn. 179, 201 (2012)); *see also National Publishing Co., Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 664, 675 (2008).

As indicated, under the terms of her policy, the Plaintiff was required, "in the event of a loss to any property that may be covered by this policy" to "[p]romptly give … notice" to the Defendant. Although the policy does not explicitly define "prompt" or "promptly," the term is not ambiguous.[1] It is well-established that when construing contracts, "[t]o ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.,* 171 Conn. App. 61, 224 (2017). The Connecticut Appellate Court, construing the term "promptly" in the context of an attorney's obligation to "promptly" notify a client of a plea offer from the prosecution, stated:

> [I]n order to assign "promptly" its ordinary definition, "[w]e look to the dictionary definition of the [term] to ascertain [its] commonly approved meaning." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 17, 950 A.2d 1247 (2008). The eleventh edition of Merriam-Webster's Collegiate Dictionary defines "prompt" as "being ready and quick to act as occasion demands ... performed readily or immediately ...." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). In addition, Random House Webster's Unabridged Dictionary defines "prompt" as "done, performed, delivered, etc., at once or without delay." Random House Webster's Unabridged Dictionary (2d Ed. 2001). Similarly, although Black's Law Dictionary does not offer a definition for the word "prompt" used in the form of an adjective or adverb, it defines the verb form of "prompt" as "[t]o incite, esp. to *immediate* action." (Emphasis added.) Black's Law Dictionary (9th Ed. 2009). In turn, Black's Law Dictionary defines "immediate" as "[o]ccurring without delay; instant ...." Black's Law Dictionary, supra.

---

[1] Indeed, the Plaintiff does not assert any such claim or address the timeliness of her notice at all.

*Helmedach v. Comm'r of Correction,* 168 Conn. App. 439, 460–61 (2016), *aff'd*, 329 Conn. 726 (2018).

There is no dispute that the Plaintiff did not notify the Defendant of her damage claim until April 26, 2016, fourteen months after she acknowledges her home incurred the storm damage. Under no circumstance could such notice be said to have been given "promptly." Again, Plaintiff does not argue to the contrary. Nor does the Plaintiff dispute that the Defendant was prejudiced by the untimely notice. It is deemed admitted that "[b]ecause Plaintiff delayed in reporting her claim for over a year, … there was no fresh ice damming damage, and Laprise was not able to determine whether certain portions of the Property were damaged by the 2015 storm or by some other cause at some other time."[2] Also deemed admitted is that "[h]ad Plaintiff reported her claim to Allstate when she first noticed damage to her property, [Laprise] would have had an opportunity to inspect the Property for potentially covered damage while that damage was still fresh and easily distinguishable from other, pre-existing damage." Moreover, Hancin, who is the Plaintiff's disclosed damages expert, testified that: (1) it is important to dry out a house that experiences water or ice dam damage because, if left untreated, the damage will get worse and cause additional damage to the property; (2) any house that experiences ice damming will continue to experience worsening damage until that damage is fixed; (3) the cost to repair that damage will increase over time; and (4) his damage estimate arises from not only the damaged caused by the 2015 storm but also the resulting damage from Plaintiff's inaction in attending to that damage.

Under these circumstances, prejudice to the Defendant is manifest. The Plaintiff's significant delay in notifying the Defendant of her claim deprived the Defendant of the opportunity

---

[2] Although the Plaintiff denied this statement in her response to the Defendant's Rule 56(a) statement, it is "deemed admitted because [it has] not been squarely denied with specific citation to evidence in the record as Local Rule 56(a)(3) requires." *Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.*, 570 F. Supp. 2d 282, 283 (D. Conn. 2008).

to promptly inspect the property, assess the then-existing damage, and repair the damage so as to avoid further loss.

Accordingly, the Court finds that the Plaintiff's delayed notice precludes her action against the Defendant, and grants summary judgment in favor of the Defendant on this basis, as well.

### *Specific Performance - Arbitration*

Notwithstanding the above, the Plaintiff argues that her demand for arbitration in Count One is not subject to statutes of limitations and is therefore not time barred. The Court disagrees. There is a distinction between statutes of limitations and contractual limitations periods. *Monteiro*, 177 Conn. at 283. A contractual suit limitation does not operate as a statute of limitations. *Id.*; *Roberts*, 2015 WL 7458510, at *3. As noted above, contractual limitations periods are binding and enforceable. *Id.*; *Voris*, 297 Conn. at 597-600. The question then is whether the demand for arbitration falls within the scope of the "Suit Against Us" provision of the policy.

To reiterate, the provision provides that "***Any suit or action*** must be brought within eighteen months after the inception of loss or damage" (emphasis added). The term "any suit or action" is extremely broad. As the Connecticut Supreme Court has observed,

> the use of the word "any" to modify [a phrase] … gives the resulting phrase an expansive meaning—one that we will not restrict in the absence of a clear limitation in the text. See, e.g., *Ramirez v. Health Net of the Northeast, Inc.,* supra, 285 Conn. at 14, 938 A.2d 576 (use of "'any'" in phrase "'any reason'" gives phrase broad and inclusive meaning [emphasis omitted] ); see also *AvalonBay Communities, Inc. v. Zoning Commission,* 280 Conn. 405, 413, 908 A.2d 1033 (2006) (legislature's use of "'any'" in statute is "broad and all-inclusive" [emphasis omitted]); *Manifold v. Ragaglia,* 272 Conn. 410, 422, 862 A.2d 292 (2004) (court will not provide "exception or limitation" to language made broad by use of word "'[a]ny'" [emphasis omitted] ); *Gipson v. Commissioner of Correction,* 257 Conn. 632, 640, 778 A.2d 121 (2001) ("'[t]he word any in statutes is generally used in the sense of all or every and its meaning is comprehensive in scope and inclusive in range'"); *Fink v. Golenbock,* 238 Conn. 183, 196, 680 A.2d 1243 (1996) (phrase "'[a]ny disputes'" is "all-embracing, all-encompassing and broad" [emphasis omitted]); *New York, New Haven & Hartford Railroad Co. v. Stevens,* 81 Conn. 16, 21, 69 A. 1052 (1908) ("[t]he word 'any' is too comprehensive to receive so narrow a construction"); *New Haven Young Men's Institute v. New Haven,* 60 Conn. 32, 39,

22 A. 447 (1891) ("[t]he word 'any,' used as an adjective, means 'one out of several or many'").

*Salce v. Wolczek,* 314 Conn. 675, 686 (2014). As such, this action, in its entirety and to include Count One, was subject to the policy's limitations provision. *See Perez v. State Farm Fire & Cas. Co.*, No. DBD CV136012334S, 2015 WL 1588382, at *2 (Conn. Super. Ct. Mar. 13, 2015) (holding that plaintiff's demand for arbitration was, in essence, a declaratory judgment action and that it was an "action" as contemplated under the contractual limitations period).

For all of the foregoing reasons, the Defendant's motion for summary judgment is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of February 2019.

/s/ *Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE